**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SWITCH COMMUNICATIONS GROUP, *et al.*, | |
| Plaintiffs, | Case No.  2:11-cv-00285-KJD-GWF |
| vs. | **ORDER** |
| DAVID MICHAEL BALLARD, | Re:  Motion to Disqualify Michael Rawlins, Esq. and the Law Firm of Durham Jones Defendant & Pinegar (#24) |

This matter comes before the Court on Plaintiff's Motion to Disqualify Michael Rawlins Esq. and the Law Firm Durham Jones & Pinegar (#24), filed on June 3, 2011; Defendant's Opposition to Plaintiff's Motion to Disqualify Michael Rawlins, Esq. and the Law Firm of Durham Jones & Pinegar (#34), filed on June 17, 2011; and Plaintiff's Reply to Michael Rawlins' Esq. Opposition to Plaintiff's Motion to Disqualify Michael Rawlins, Esq. (#41), filed on June 27, 2011. The Court conducted a hearing in this matter on August 3, 2011 during which it denied Plaintiff's motion to disqualify on the record. The Court took under advisement whether it should award Defendant his reasonable attorney's fees and costs in being required to respond to the motion. The Court now issues this order explaining the basis for its denial of the motion to disqualify and its conclusion that, notwithstanding the lack of merit in the motion to disqualify, sanctions against Plaintiff or its counsel are not available under Rule 11 of Federal Rules Civil Procedure.

## BACKGROUND

Defendant Michael Ballard worked for the Plaintiff Switch Communications Group ("Switch") from October 2003 to April 2006, serving as its chief financial officer. After his termination as CFO in April 2006, Defendant continued to work for Switch as Manager and Secretary for the Board until his resignation on November 27, 2006. Some time thereafter, Mr.

1  Ballard began working with One Velocity (d/b/a 1Velocity).  Defendant Ballard is currently
2  attempting to build a data center that will compete with the data center operated by Switch.  Russell
3  Ketchum ("Ketchum"), a friend of Mr. Ballard and an IT professional, is assisting Mr. Ballard in
4  building the data center and will likely work at the data center upon completion.  Mr. Ketchum was
5  previously represented by Defendant's counsel, Michael Rawlins, in a lawsuit that Mr. Ketchum
6  brought against Switch.  Mr. Ballard has also formed Cobalt Sahara, LLC, to purchase the land
7  where the data center will be located, and Cobalt Data Centers, LLC, which will allegedly operate
8  the data center once it is completed.  Switch alleges that Defendant Ballard, in concert with non-
9  parties Ketchum, 1Velocity, Cobalt Data Centers and Cobalt Sahara, has misappropriated Switch's
10 trade secrets or other confidential, proprietary information, including financial and design plans, in
11 order to build his competing data center.  Switch previously filed motions to amend its complaint to
12 join Mr. Ketchum, 1Velocity, Cobalt Data Centers and Cobalt Sahara as co-defendants.  The Court
13 denied Switch's motion to amend on August 12, 2011 on procedural grounds, without prejudice to
14 refile the motion in the proper form. *Order (#59).*

15    During the course of discovery in this case, Switch served subpoenas duces tecum on 1
16 Velocity and Mr. Ketchum.  Mr. Rawlins responded to the subpoena on behalf of 1 Velocity and
17 Ketchum.  Switch alleged that the documents produced by 1 Velocity and Ketchum were deficient
18 in view of the more voluminous documents produced by Mr. Ballard or by other non-parties and
19 that Mr. Rawlins was responsible for the deficient production.  Switch also alleged that Mr. Rawlins
20 has frustrated its efforts to schedule Mr. Ketchum's deposition in this case.

21    Switch moved to disqualify Michael Rawlins based on his concurrent representation of
22 Defendant Ballard, 1 Velocity, and Mr. Ketchum, and his likely representation of the Cobalt
23 entities.  Switch argued the Mr. Rawlins' representation of these individuals and entities violates the
24 conflict of interest rules under Nevada Rules of Professional Conduct because he has allegedly
25 acted adversely to the best interests of 1 Velocity and Mr. Ketchum in responding to the subpoenas
26 served by Switch.  Switch has also argued that as this case goes forward, conflicts are likely to
27 develop between Defendant Ballard, 1 Velocity, Ketchum and the Cobalt entities that will make it
28 impossible for Mr. Rawlins to fulfill his ethical duties to each and all of them.  Switch has made no

allegation that it has ever had an attorney-client relationship, direct or indirect, with Mr. Rawlins.

## DISCUSSION

Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary. *United States v. Titan Pacific Constr. Corp.*, 637 F.Supp. 1556, 1562 (W.D.Wash. 1986). Motions to disqualify opposing counsel are subject to particularly strict judicial scrutiny because there is a significant possibility of abuse for tactical advantage. *Kelly v. CSE Safeguard Insurance Co.,* 2010 WL 3613872 *1 (D.Nev. 2010), citing *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.,* 760 F.2d 1045, 1050 (9th Cir.1985) (citations omitted). Courts must prevent parties from misusing motions for disqualification as instruments of harassment or delay. *IN-N-OUT Burger v. In & Out Tire & Auto, Inc.*, 2008 WL 2937294 *3 (D.Nev. 2008).

As a general rule, courts will not disqualify an attorney for conflict of interest unless the client, whether former or current, moves for disqualification. *Sentry Select Insurance Co. v. Meyer*, 2011 WL 1103333, *7-*8 (D.Nev. 2011); *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976). The court in *Sentry*, quoting *United States v. Walker River Irrigation District,* 2006 WL 618823 (D.Nev.2006), states, however, that a non-client may move to disqualify an attorney for conflict of interest under limited circumstance:

> The current standard applied to non client motions to disqualify articulated in *Colyer v. Smith* [50 F.Supp.2d 966, 967 (C.D.Cal. 1999)] requires a non client to show they have a "personal stake in the motion," *id.* at 971, because of an "ethical breach [that] so infects the litigation ... that it impacts the moving party's interest in a just and lawful determination of her claims...." *Id.* This is a two-step inquiry, and the alleged injury to the non client movant must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 973. This standard assures that non clients will not abuse the state rules of professional responsibility by using them as tactical measures to harass the opposition or cause delay.

*Sentry* further states:

> There is an additional ground on which a non-client may have standing to seek an attorney's disqualification. The court may "disqualify an attorney from representing a particular client in order to preserve the integrity of its judgment [and] maintain public confidence in the integrity of the bar." *Coles v. Arizona Charlie's,* 973 F.Supp. 971, 973 (D.Nev.1997). Moreover, as noted in *Colyer v. Smith, supra,* 50 F.Supp.2d at 970, under the Model Rules of

|   |   |
|---|---|
| 1 | Professional Conduct, opposing counsel has an independent obligation to bring to the attention of the court "facts justifying a disqualification of counsel," even if opposing counsel does not represent the aggrieved client. *United States v. Clarkson,* 567 F.2d 270, 271 n. 1 (4th Cir.1977). *See also Brown & Williamson Tobacco Corp. v. Daniel International Corp.,* 563 F.2d 671, 673 (5th Cir.1977) ("Appellant has standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations in the case."); *In re Gopman,* 531 F.2d 262, 265 (5th Cir.1976) ("When an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention."). The Nevada Rules of Professional Conduct impose such an obligation. Rule 8.3(a) provides that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority." Rule 8.4(d) provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." |

Switch's motion to disqualify Mr. Rawlins under any of these tests was without merit. As stated, Switch has never had an attorney-client relationship with Mr. Rawlins that would give it standing to move for his disqualification under the general rule. Second, to the extent that Switch had any legitimate concerns that Mr. Rawlins was improperly frustrating its efforts to obtain relevant documents from 1 Velocity or Mr. Ketchum, it had readily available means to compel production. Switch could have filed a motion pursuant to Fed.R.Civ.Pro. 45(c)(2)(B)(i) to compel 1Velocity or Mr. Ketchum to comply with the subpoenas. It could also have scheduled Mr. Ketchum's deposition and served him with a subpoena to appear for deposition.

Assuming that Switch did have standing, its arguments that Mr. Rawlins has conflicts of interest in representing Defendant Ballard, Mr. Ketchum, 1Velocity, Cobalt Data Centers and Cobalt Sahara were based on nothing more than speculation. Switch presented no evidence that Mr. Rawlins has committed any ethical violation in representing these individuals or entities that would trigger the Court's obligation "to preserve the integrity of its judgment [and] maintain public confidence in the integrity of the bar." Based on this record, the Court concludes that the motion to disqualify Mr. Rawlins and his law firm was without merit.

The imposition of sanctions against a party or its counsel for filing a frivolous motion to disqualify opposing counsel is governed by Rule 11 of the Federal Rules of Civil Procedure.

*See Adriana Intern. Corp. V. Thoeren*, 913 F.2d 1406, 1416 (9th Cir. 1990) (the district court did not abuse its discretion in awarding Rule 11 sanctions for a motion to disqualify brought without factual support). *See also So v. Land Base, LLC*, 2010 WL 3075641, *4 (C.D.Cal. 2010). While this Court believes that Switch's motion to disqualify was without merit and therefore justifies an award of sanctions against Plaintiff, Defendant did not comply with the "safe-harbor" provision of Rule 11(c)(2) which provides that the party seeking Rule 11 sanctions must serve a separate motion for sanctions on the offending party and afford it the opportunity to withdraw the frivolous or meritless pleading or paper before filing the motion for sanctions with the court. Rule 11 sanctions are therefore not available in this matter. Sanctions could arguably be awarded against Plaintiff's counsel pursuant to 28 U.S.C. §1927. *See De Dios v. International Realty & Investments*, 641 F.3d 1071, 1076-1077 (9th Cir. 2011). The Court also declines to award sanctions under this statute in the absence of Defendant having made a demand on Plaintiff to withdraw the motion to disqualify prior to filing a motion for sanctions. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's request for sanctions in its Opposition to Plaintiff's Motion to Disqualify (#34) is **denied** based on Defendant's lack of compliance with Fed.R.Civ.Pro. 11(c)(2).

**DATED** this 31st day of August 2011.

**GEORGE FOLEY, JR.**
**United States Magistrate Judge**