**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SWITCH COMMUNICATIONS GROUP, *et al.*,

Plaintiffs,

vs.

DAVID MICHAEL BALLARD,

Defendant.

Case No. 2:11-cv-00285-KJD-GWF

**ORDER**

**Motion to Compel - #23**

This matter is before the Court on Defendant's Motion to Compel Plaintiff to 1) Produce Documents Required by FRCP 26(a)(1)(A); 2) Provide Complete Responses to Defendant's First Set of Interrogatories; and 3) Produce Documents Requested in Defendant's First Request For Production of Documents (#23), filed on May 27, 2011; Plaintiff's Opposition to the Motion to Compel Discovery (#30), filed on June 13, 2011; Defendant's Reply Points and Authorities in Support of Motion to Compel (#38), filed on June 23, 2011; Supplement to Plaintiff's Opposition to the Motion to Compel Discovery (#42), filed on June 30, 2011; and Defendant's Supplemental Reply Points and Authorities in Support of Motion to Compel (#54), filed on July 15, 2011. The Court conducted a hearing on this matter on August 3, 2011.

Following the hearing, the Court was copied with an August 5, 2011 letter that Plaintiff's counsel sent to Defendant's counsel regarding supplementation of Plaintiff's discovery responses. Plaintiff also provided Defendant's counsel and the undersigned Magistrate Judge with a copy of documents that Plaintiff has previously submitted *in camera* to the District Judge in support of Plaintiff's motion for summary judgment. These documents apparently constitute Plaintiff's supplemental disclosure of documents under Rule 26(a) of the Federal Rules of Civil Procedure.

**BACKGROUND**

Plaintiff Switch Communications, LLC ("Switch") filed this action against Defendant David Michael Ballard ("Ballard") in the Nevada state court on February 11, 2011. Defendant removed the action to this Court on February 22, 2011. Switch alleges that Ballard served as its chief financial officer for approximately two years until June 2006. On or about May 15, 2006, Switch and Ballard allegedly executed a Confidentiality and Assignment of Inventions Agreement. *Complaint (#1)*, ¶¶ 5-6. Switch alleges that during his employment, Ballard became intimately aware of Plaintiff's trade practices and trade secrets, including the location of Plaintiff's carrier fiber and the structure of the related carrier fiber agreements, the location of Switch's key clients' installations, the terms of Switch's agreements with said key clients, who Switch's primary contractors and vendors are, the terms of Switch's arrangements with said contractors and vendors, the design and operation of Switch's datacenter facilities, and the like. ¶ 8.

Switch alleges that it became aware that Ballard was planning to construct a data center on property adjacent to Switch's datacenter located on East Sahara Avenue in Las Vegas, Nevada. ¶¶ 11-14. Switch further alleges that Ballard had enticed certain companies that were key contractors and architects of Switch's "colocation facilities" to participate in the construction of his project using technical drawings and schematics either identical to or materially similar to those owned by Switch and utilized to construct the Switch datacenters. ¶ 15. The complaint alleges causes of action against Ballard for misappropriation of intellectual property, breach of contract, tortuous interference with contractual relations, unfair commercial advantage, unjust enrichment, declaratory relief, and copyright infringement. *Complaint*, ¶¶ 16-56.

Ballard served its First Set of Interrogatories on Switch in or about March or April 2011. Interrogatory No. 1 is a lengthy interrogatory with several sub-parts. Rather than attempt to describe it, the Court will simply quote it verbatim as follows:

> INTERROGATORY NO. 1:
>
> For each "trade practice," "trade secret," item of confidential information, or other item of "intellectual property" of plaintiffs that you contend Mike Ballard or Cobalt has misappropriated, is misappropriating, or you believe is likely to misappropriate, do the following:

      a. Describe it in detail.

b. Identify every document that contains or describes it.

c. State with specificity all facts, if any, that would support the contention that it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can contain (sic) commercial or economic value from its disclosure or use.

d. Describe in detail every effort taken by plaintiffs to maintain its secrecy.

e. Identify every person to whom you have disclosed it or permitted to see it, and describe for each such person every effort to maintain its secrecy with respect to that person.

f. State every fact that supports your contention that Ballard or Cobalt have misappropriated it, is misappropriating it, or is likely to misappropriate it.

g. Describe and quantify in detail, the damages that plaintiff has suffered or will suffer from alleged misappropriation of it.

Your response to Interrogatory number 1 should include the requested information for, without limitation, (a) every particular element of the design of plaintiffs' facilities that you contend Ballard or Cobalt has misappropriated, is misappropriating, or is likely to misappropriate, (b) every element of design reflected in the last three pages of Plaintiffs FRCP.l [sic] Initial Disclosure of Documents and Witnesses (the Harris drawings EC-l, EC162, and MC-l) that you contend Ballard or Cobalt has misappropriated, is misappropriating, or is likely to misappropriate, (c) the identity of every vendor, contractor, or customer whose identity you contend is a trade secret or is confidential information, (d) each contract you contend contains information that Ballard or Cobalt has misappropriated, is misappropriating, or is likely to misappropriate, (e) the items referred to in paragraph 8 of your Complaint, (f) the trade agreements and trade secrets referred to in paragraph 18, 19, and 26 of your Complaint, and (g) the "intellectual property" referred to in paragraph 20 of your Complaint.

*Motion to Compel, Exhibit E, Plaintiff's Responses to Defendant's First Set of Interrogatories.*

Switch objected to Interrogatory No. 1 on a number of grounds including that it "contains at least 25 discrete subparts, including several subparts beyond the limit imposed by Federal Rules of Civil Procedure 33." Subject to these objections, Switch provided the following response to Interrogatory No. 1:

   Notwithstanding and without waiving said objection, and in good faith production, Answering Plaintiffs respond as follows:

   a. As alleged in Plaintiffs' Complaint, Switch is the operator of several datacenters and is a colocation services provider. Ballard acted as Switch's Chief Financial Officer for approximately two years. On or about May 15, 2006, Switch Business Solutions, LLC and Ballard executed a Confidentiality and Assignment of Inventions Agreement. During his employ at Switch, Ballard became intimately aware of Plaintiffs' trade practices, confidential information, and trade secrets, including (but not limited to) the location of Plaintiffs' carrier fiber and the structure of the related carrier fiber agreements, the location of Switch's key clients' installations, the terms of Switch's agreements with said key clients, the identities of Switch's primary contractors and vendors including Harris Consulting, Korte Construction, among others, the terms of Switch's arrangements with said contractors and vendors, the design and operation of Switch's datacenter facilities, and the like. Specifically, Ballard became aware of technology and designs unique to Switch's offerings and novel to the datacenter industry, including unique Heating Ventilation and Air Conditioning ("HVAC") designs, server rack layout and power designs, segregated air designs, among other novelties to the datacenter industry invented by CEO Rob Roy and other Switch employees and contractors, physical security measures unique to Switch, Tri-Redundant Electrical Block Designs assigned to Switch in the construction of NAP 4 attached to Plaintiffs' response to Ballard's First Set of Requests for Production No. 12. Ballard was immediately terminated by Switch and escorted from the building in April, 2006. After termination, Ballard asked other senior executives to leave Switch with him, communicated with Switch's contractors and vendors, and represented himself as a founder of Switch without Switch's authorization, with the hope of designing a competing datacenter, to capitalize on Switch's confidential information, intellectual property, and trade secrets presented to him in confidence as CFO.

   b. Documents discussing the intellectual property, confidential information, and trade secrets misappropriated by Ballard include but are not limited to the emails discussing Switch's designs provided pursuant to subpoena by Harris Consulting, bates labeled "Harris 000001-000846", specifically, bates labels: Harris 000059-60; Harris 000166-175; Harris 000270-305; Harris 000664-665; Harris 000846; and, Harris 000636. As well as emails and documents produced by Korte Construction, bates labeled "TKC 000001-004964" specifically, bates labels: TKC 000211, 000351, 00491; 576; Korte 000591; Korte 000936-953; Korte 000978-980; Korte 002915-2961; Korte 003139; Korte 003157-58; Korte; 003033; Korte 003320; Korte 003341; 003340-3344; Korte 003402-3404; Korte 004798; Korte 004944; Korte 003587-3604.

   c. The technology and designs novel to the datacenter industry discussed above derive independent economic value in that they are trade secrets which offer material unparalleled economic value and reduce the overall cost of a customer's ownership of multimillion dollar computer equipment as uniquely offered by

Switch, which thereby entices and retains new customers to Switch's facilities. These confidential, trade secret and design features are unique to Switch's Network Access Points (NAPs), are physically and electronically guarded and hidden from public view by constant security monitoring, and disclosed only to those who sign Non-Disclosure Agreements to maintain that confidentiality.

d. The confidentiality and secrecy of Plaintiffs' facility is strictly maintained and preserved. Some of the Plaintiffs' measures to preserve secrecy include, a requirement that every individual who tours the facility, as well as all customers, contractors, vendors, and agents of Switch sign a Non-Disclosure Agreement, produced in response to Defendants First Set of Requests for Production of Documents, Request No.4. Additionally, below is Section 11.3 of Switch's standard Colocation Facilities Agreement, which protects Switch's trade practices, trade secrets, and items of confidential information:

> 11.3 Confidentiality. The parties acknowledge and agree (i) that this Agreement is the confidential information of each party; (ii) the technical aspects of Customer's deployment in the Colocation Space is the confidential information of Customer and (iii) the design of the Premises and the manner by which Switch provides the Colocation Services and Carrier Services are the confidential information of Switch (collectively, "Confidential Information"). Confidential Information may only be used by the recipient in connection with its performance under this Agreement. Confidential Information may not be disclosed except to those employees or contractors of the recipient with a need to know and who agree to hold the information in confidence. If the recipient is legally compelled to disclose Confidential Information, the recipient shall provide the discloser with notice of such requirement prior to disclosure (if permissible) so that the discloser may seek any appropriate remedy. Confidential Information excludes information that: (i) is or becomes generally available to the public through no wrongful act of the recipient; (ii) is received from a third party with the right to supply it; or (iii) is independently developed by the recipient. Upon termination of this Agreement or upon written request, the recipient will return the Confidential Information to the discloser and shall not retain any copies of such Confidential Information. The parties acknowledge and agree that Switch does not require access to any Confidential Information (including end customer information) which may be located on the Customer Equipment. Switch covenants not to attempt to access any information on the Customer Equipment without the prior written consent of Customer and Customer covenants not to provide Switch with access to such information without the prior written consent of Switch.

e. Please see response to subsection (d) above.

f. Please see response to subsection (b) above.

g. This subpart seeks premature disclosure of expert witness testimony as to the economic cost required to develop Switch's trade secrets, confidential information, and intellectual property over the past 10 years, as well as the damage inherit in Ballard's use of the same to create a competing datacenter feet away from Switch's NAP4 facility, utilizing Switch's designs novel to the datacenter industry.

*Id. Exhibit E.*

Ballard's First Set of Interrogatories included ten additional interrogatories, Nos. 2-11. Unlike Interrogatory No. 1, these interrogatories were fairly brief and, with the exception of Nos. 3 and 9, do not contain explicit subparts. Switch objected to Interrogatory Nos. 2-11 on the ground that they were propounded beyond the 25 interrogatory limit. Switch also objected to some of these interrogatories on the grounds they contained discrete subparts. *Id. Exhibit E.* Ballard disputes Switch's objection that Interrogatory No. 1 contains more than 25 discrete subparts and requests that Switch's objections on this ground be overruled and that it be ordered to answer Interrogatory Nos. 2-11. Ballard also contends that Switch's answer to Interrogatory No. 1 is inadequate and that it should be ordered to provide more specific information in response to the various subparts, including subpart g. which seeks information regarding Switch's alleged damages.

Ballard has also moved to compel Switch to produce documents required by Rule 26(a)(1) and to produce documents requested in Defendant's first set of requests for production of documents. Switch objected to Ballard's requests for production on a variety of grounds, provided a few documents in response to some, and reserved its right to supplement its responses at a later date. Ballard argued in its motion that it is entitled to complete responses to all of its requests. In its August 5, 2011 letter, Switch also notified Ballard that it would be serving supplemental responses to the requests for production.

## DISCUSSION

### A. Interrogatories:

#### 1. Whether Defendant's First Set of Interrogatories Exceeds the Limit of 25 Interrogatories Under Rule 33.

Rule 33(a)(1) of the Federal Rules of Civil Procedure provides that unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Despite the fact that this district has established case law defining "discrete subparts" under Rule 33, neither party discusses that case law. Likewise neither party attempted to explain its position regarding the number of discrete subparts in Interrogatory No. 1 or in the other interrogatories. Defendant Ballard generally argues that Interrogatory No. 1 does not contain more than 14 discrete subparts and Switch therefore had no

basis to object to the subsequent interrogatories on the ground that Interrogatory No. 1, alone, exceeds 25 interrogatories. Conversely, Switch made no attempt to justify its assertion that Interrogatory No. 1 contains 25 or more discrete subparts or to justify its assertions regarding the number of subparts in the other interrogatories.

The subparts of an interrogatory are to be counted as part of but one interrogatory if they are logically or factually subsumed within and necessarily related to the primary question. *Kendall v. GES Exposition Services Inc.,* 174 F.R.D. 684, 685 (D.Nev. 1997). The best test to determine whether subparts are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. If the question in the subpart can be answered independently of the "primary" question, then it should be treated as a separate interrogatory. *Id. Kendall* provided examples of interrogatories that contain one primary question and secondary questions which should not be counted as discrete subparts, as well as interrogatories that contain discrete questions that should be treated as separate interrogatories. The court stated that an interrogatory which asked the defendant whether plaintiff was given any warning or reprimand during her employment, followed by a request to identify the date of each warning or reprimand, a brief description of the incident, and the person who administered the warning/reprimand by name, gender, position and address, should be considered as one interrogatory. An interrogatory that asked the defendant to identify the minimum qualifications for an employee for a particular position and which also asked that defendant to identify any documents in which the qualifications are articulated, however, constituted two separate questions. *Kendall*, 174 F.R.D. at 686. As these examples indicate, the test is not precise. Determining whether a particular question should count as a separate interrogatory requires a pragmatic approach. *Thomas v. Yates*, 2009 WL 3273280,*2 (E.D.Cal. 2009).

Defendant Ballard's Interrogatory No. 1 attempts to encompass most, if not all, of the different elements of a cause of action for misappropriation of trade secrets under Nevada law. *See* Nevada Revised Statutes (NRS) Section 600A.030 et. seq. Such an omnibus interrogatory, which contains two different sets of subparts, makes it even more difficult to determine the number of discrete subparts. While not *per se* improper, this type of unwieldy interrogatory should probably

be avoided for this very reason.

The first question in this interrogatory, including subpart a., asks Switch to describe in detail each "trade practice," "trade secret," item of confidential information or other item of "intellectual property" that has been, is being or is likely to be misappropriated by Ballard. Although each of these terms could arguably be construed as a separate subpart, Defendant's use of these terms appears to result from the vagueness of Plaintiff's first cause of action entitled "Misappropriation of Intellectual Property." It is unclear whether that claim is limited to the alleged misappropriation of "trade secrets" as defined by Nevada law or is intended to encompass a broader scope of allegedly protected information. The interrogatory seeks to obtain a description of all information that Switch alleges is entitled to protection and which it alleges Ballard has misappropriated or is likely to misappropriate. The Court therefore treats these items as subordinate parts of one primary question. Interrogatory 1.a therefore constitutes one question.

Subparts a-g of Interrogatory No. 1 ask a series of questions directed at the different elements of a misappropriation of the trade secrets claim, including Plaintiff's efforts to protect the confidentiality of the information and Plaintiff's alleged damages. On balance, these subparts should be treated as discrete interrogatories. The last paragraph of the interrogatory contains an additional seven subparts (a)-(g) which describe the detail of information that Ballard requests be provided in response to the preceding subparts of the interrogatory. Even if the Court considered each of these subparts a separate interrogatory, which it does not, this would result in an arguable total of 14 separate questions in Interrogatory No. 1. While the Court reiterates that the form of the interrogatory makes it difficult to determine the number of discrete subparts, Switch made no attempt to explain how it determined that Interrogatory No. 1 has more than 25 subparts. The Court therefore concludes that Switch's assertion that Interrogatory No. 1 contains at least 25 subparts is without merit.

Switch also objected to some of the subsequent interrogatories on the grounds they contain more than one discrete subpart. The Court finds that Interrogatory No. 3 probably contains two interrogatories, the first regarding "key contractors" that Ballard allegedly enticed to violate their agreements with Switch, and the second relating to the damages suffered by Switch in regard to this

claim. Interrogatory No. 4 arguably contains two interrogatories. The first question asks Switch to identify the intellectual property or trade secrets that Ballard is using to build a competing data center, and the second question asks Switch to state how the use of such intellectual property or trade secrets gives Ballard an unfair advantage. The Court does not find merit in Switch's objections to other interrogatories on the ground that they contain two or more discrete subparts. Even where Switch may have some basis to argue that an interrogatory contains more than one discrete subpart, it exaggerates the number of discrete subparts and never provides an explanation for its assertions. The Court, therefore, concludes that Defendant's First Set of Interrogatories do not, as a whole, exceed the limit of 25 interrogatories. Switch's objections to Interrogatory Nos. 2-11 on this ground are therefore overruled and it is ordered to answer Interrogatory Nos. 2-11.

**2. <u>Sufficiency of Switch's Response to Interrogatory No. 1</u>.**

Ballard argues that Switch's answer to Interrogatory No. 1 is insufficient because it essentially does no more than repeat the general allegations set forth in the complaint, which Ballard argues also fails to adequately plead a claim for misappropriation of trade secrets. Ballard argues that Switch is required to identify the specific trade secrets that it claims have been or are being misappropriated by Ballad and to show that they are, in fact, trade secrets. *MAI System Corp. v. Peak Computer Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). As the court in *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F.Supp. 1170, 1177 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990), stated, "'the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.' *Diodes, Inc. v. Franzen,* 260 Cal.App.2d 244, 253, 67 Cal.Rptr. 19 (1968)."

Switch objected to Interrogatory No. 1 on the grounds that it is vague and ambiguous, over broad and unduly burdensome. Although Rule 33(a)(2) authorizes the use of contention interrogatories, courts have criticized "all-encompassing" contention interrogatories as unduly burdensome and have either sustained objections to them or have modified them. *See Hilt v. SFC Inc.*, 170 F.R.D. 182, 187-188 (D.Kan. 1997) and *Steil v. Humana Kansas City, Inc.*, 1197 F.R.D. 445, 447 (D.Kan. 2000). *Steal* states that an interrogatory may reasonably ask for the material or

principal facts which support a party's contentions. "However, 'to require specifically 'each and every' fact and application of law to fact ... would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details.'" (citation omitted). The court in *Mancini v. Insurance Corporation of New York*, 2009 WL 1765295, *3 (S.D.Cal.), citing *Steil,* noted that contention interrogatories are often overly broad and unduly burdensome when they require a party to state "every fact" or "all facts" supporting identified allegations or defenses. The court modified the interrogatories in that case to seek "the material or principal facts" instead of "all facts."

Subject to the type of modification imposed in *Mancini*, Ballard is entitled to an answer to Interrogatory No. 1 which identifies the specific trade secrets that Switch alleges Ballard has misappropriated or that it has reason to believe he intends to misappropriate for use in his competing data center. If Switch's first cause of action is predicated on something other or more than misappropriation of "trade secrets," then Switch also needs to explain that in its answer to Interrogatory No. 1. Switch is also required to set forth in reasonable detail, the facts which support its claim that the information it seeks to protect qualify as trade secrets under Nevada law. Switch is also required to identify the documents that contain or describe the particular trade secrets or "intellectual property" that it alleges have been or are likely to be misappropriated by Defendant Ballard.

Switch's answer to subpart a. of Interrogatory No. 1 states that Ballard became aware of technology and designs unique to Switch's offerings and novel to the datacenter industry, *including* unique Heating Ventilation and Air Conditioning ("HVAC") designs, server rack layout and power designs, segregated air designs, *among other novelties* to the datacenter industry invented by CEO Rob Roy and other Switch employees and contractors, physical security measures unique to Switch, Tri-Redundant Electrical Block Designs assigned to Switch in the construction of NAP 4 attached to Plaintiff's response to Ballard's First Set of Requests for Production No. 12. While this answer provides more information than was contained in Switch's complaint, it does not identify the specific HVAC designs, server rack layout and power designs, or segregated air designs that Switch alleges are entitled to trade secrets protection and which it alleges that Mr. Ballard has

misappropriated or is likely to misappropriate.

Switch also qualifies its list of allegedly misappropriated trade secrets with the adjective "including." This, of course, leaves open the possibility that there are other allegedly misappropriated trade secrets that Switch, for whatever reason, does not identify in its answer to Interrogatory No. 1. Likewise Switch's statement in answer to subpart b. that "[d]ocuments discussing the intellectual property, confidential information and trade secrets misappropriated by Ballard *include* . . . ," casts doubt on whether Switch has made a diligent effort to identify all of the documents responsive to the interrogatory. Switch's statement in response to subpart d. that "[s]ome of the Plaintiff's measures to preserve secrecy *include* . . . ," also suffers from the same vagueness and uncertainty.

A party responding to an interrogatory is required to make a reasonable inquiry in order to identify and provide a complete answer based on the information reasonably known to the party or its agents. *FDIC v. Halpern,* 271 F.R.D. 191, 193 (D.Nev. 2010), citing 8B Wright, Miller, Kane & Marcus, FEDERAL PRACTICE AND PROCEDURE § 2177 (3rd Ed.2010). Although a party may later supplement its answer in accordance with Fed.R.Civ.Pro. 26(e), this is not an excuse for failing to provide complete answers based on the information presently available. Switch is therefore ordered to identify the specific trade secrets, the specific measures it has taken to protect those secrets from disclosure, and the documents relating to its answer to Interrogatory No. 1.a.

Switch objected to subpart g. of Interrogatory No. 1, which asked it to describe its alleged damages, on the grounds that it seeks premature disclosure of expert witness testimony. Although Switch's alleged damages may ultimately be based on the opinions of expert witnesses, this does not justify it in not providing any information regarding its alleged damages. Even without being served with an interrogatory, a plaintiff is required by 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure to provide a computation of each category of damages it seeks. The computation should provide sufficient detail, based on the information presently available to the plaintiff, to enable the defendant to understand the contours of his potential exposure and make informed decisions regarding settlement and discovery. *City and County of San Francisco v. Tutor–Saliba Corporation,* 218 F.R.D. 219, 221 (N.D.Cal.2003). This includes disclosure of the theory or basic

method or formula by which plaintiff contends its damages should or will be calculated. *24/7 Records, Inc. v. Sony Music Entertainment, Inc.,* 566 F.Supp.2d 305, 318 (S.D.N.Y.2008); *Heerden v. Board of Sup'rs of LSU,* 2011 WL 293758, *8 (M.D.La.2011). Switch's objection to subpart g. of Interrogatory No. 1 is therefore overruled, and it is required to provide a description of each category in its alleged damages, including the theories and bases therefore based on the information presently available to it, with the understanding that its claimed damages may hereafter be modified or supplemented once its damages experts have completed their analysis and rendered their opinions.

In its counsel's August 5, 2011 letter to Defendant's counsel, Switch promised to provide a supplemental answer to Interrogatory No. 1 and to answer Defendant's other interrogatories by August 19, 2011. The Court has not been advised as to whether such supplementation has occurred or, if so, whether the supplemental responses are adequate in the eyes of the Defendant. Consistent with this order, the parties should further meet and confer regarding Switch's supplemental discovery responses if necessary. On request of either party, the Court will schedule a follow-up status hearing on this matter.

**B. Plaintiff's Initial Disclosures Pursuant to Fed.R.Civ.Pro. 26(a)(1)(A)(ii) and Responses to Requests for Production.**

Ballard moves for an order requiring Switch to produce documents required by Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. This rule requires a party to disclose the documents it may use to support its claims or defenses unless the use would be solely for impeachment. Failure to timely disclose information or documents pursuant Rule 26(a) or (e) may result in the party being precluded from using the information to support its claims or defenses. *See* Fed.R.Civ.Pro. 37(c). Rule 26(a)(1)(A)(ii), however, does not require a party to produce relevant documents that it does not intend to use in support of its claims or defenses. *Farmers Co-op. Co. v. Bartlett Grain Co., L.P.*, 2011 WL 612060, *6 (D.Neb. 2011); *Ruddell v. Weakley County Sheriff's Dept.*, 2009 WL 3757705 (W.D. Tenn. 2009). The proper method for obtaining relevant documents is a request for production pursuant to Rule 34 and, if necessary, a motion to compel responses to requests for production.

Pursuant to its August 5, 2011 letter to Ballard's counsel, Switch supplemented its Rule 26(a)(1)(A)(ii) disclosures by providing a copy of the document that it previously provided to the District Judge for *in camera* review. The Court cautions Switch that if it has not disclosed all documents presently in its possession, custody or control and which it should reasonably know that it may use in support its claims in this case, then, in accordance with Rule 37(c), it may hereafter be precluded from using those documents to support its claims in this case.

Ballard also argues that Switch has asserted invalid objections to its requests for production of documents and, to the extent Switch has produced documents, its production has been substantially incomplete and deficient. The Court rules on Defendant's motion to compel responses to requests for production of documents as follows:

Request No. 1 requests all documents identified in response to Interrogatory No. 1. Switch did not object to this request, but simply referred Defendant to its initial disclosures and supplements thereto. Additional documents, if any, responsive to this request should be produced when Switch supplements its answer to Interrogatory No. 1. Request Nos. 2-8, and 14 are repetitive of Request No. 1. Rather than address these requests individually, the Court orders Switch to produce the non-privileged documents that contain relevant information relating to the trade secrets or "intellectual property" that Switch alleges is legally protected from use by Defendant or other third persons, including any efforts made by Switch to protect their confidentiality, and which it alleges Ballard has misappropriated or is likely to misappropriate in building his competing data center.

Switch is also ordered to produce documents relating to Ballard's termination (Request No. 9) and contracts or agreements that Ballard allegedly breached (Request No. 11). Request No. 10, which seeks all documents generated, received or sent after January 1, 2008 that refer to Ballard, is vague and over broad. Switch is not required to respond to this vague and over broad request.

Switch is ordered to produce documents relating to Defendant's alleged infringement of copyrights owned by Switch (Request No. 12). Switch is also ordered to produce documents in its possession, custody or control relevant to its allegations regarding the "Property" on which Ballard allegedly plans to construct his competing data center (Request No. 13).

Switch is ordered to produce articles, press releases, etc, which have been publicly disseminated by it that contain information about Switch's data centers or business that Switch otherwise alleges are confidential or protected trade secrets, such as the identities of its vendors, contractors or the locations of its carrier fiber or clients' installations (Request No. 15) and publicly disseminated speeches and statements given by Switch's CEO Rob Roy relating to the operations, designs or capabilities of Switch which it nevertheless alleges are confidential or "trade secrets (Request No. 16). Switch is also ordered to produce recorded or preserved portions of its publicly accessible website(s) that contain information about Switch's data centers or business activities or contacts that Switch nevertheless alleges are confidential or protected trade secrets (Request No. 17). Switch is also ordered to produce any documents that list its vendors, clients or contractors whose identities Switch alleges are protected trade secrets or confidential information. To extent that Switch alleges that certain documents do, in fact, contain confidential proprietary information or trade secrets, they should or may be produced to Defendant Ballard in accordance with the provisions of the confidentiality/protective order entered in this case. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Plaintiff to 1) Produce Documents Required by FRCP 26(a)(1)(A); 2) Provide Complete Responses to Defendant's First Set of Interrogatories; and 3) Produce Documents Requested in Defendant's First Request For Production of Documents (#23) is **granted**, in part, and **denied**, in part, in accordance with the provisions of this order. To the extent that Switch has not already provided supplemental answers to interrogatories or produced documents in compliance with the provisions of this order, it shall due so on before **September 19, 2011**.

DATED this 7th day of September, 2011.

George Foley Jr.

GEORGE FOLEY, JR.
United States Magistrate Judge