1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8   SWITCH COMMUNICATIONS GROUP, *et al.*,  )
                                           )
9                        Plaintiffs,       )        Case No.  2:11-cv-00285-KJD-GWF
                                           )
10   vs.                                    )        **ORDER**
                                           )
11   DAVID MICHAEL BALLARD,                 )
                                           )
12                        Defendant.        )
    _____)
13

14         This matter is before the Court Plaintiff's First Motion to Compel Defendant to Produce

15   Responses and Responsive Documents to Plaintiff's Discovery Requests (#91), filed on December

16   22, 2011; Defendant's Opposition to Plaintiff's First Motion to Compel (#105), filed on March 28,

17   2012; and Plaintiff's Reply in Support of Plaintiff's First Motion to Compel (#117), filed on April

18   10, 2012.  Also before the Court is Defendant's Request for Status Conference to Discuss

19   Plaintiffs' compliance with Order Granting in Part Ballard's Motion to Compel (#110), filed under

20   seal on March 30, 2012.  The Court conducted a hearing in this matter on June 8, 2012.[1]

21                              **BACKGROUND**

22         Plaintiffs Switch Communications Group, LLC and Switch Business Solutions,  LLC,

23   hereinafter referred to as "Switch," owns and operates computer "data centers" located in the Las

24   Vegas Metropolitan area.  These data centers are large warehouse facilities that house computer

25   servers of customers who lease space in the data centers.  For purposes of this lawsuit, there appear

26   to be four primary attributes to a well designed data center: (1) adequate and redundant electrical

27   power to serve the computer equipment and prevent power outages, (2) fiber optic

28
_____

[1]The briefing and hearing on these matters were continued while the parties engaged in settlement
negotiations.

cable/connections, (3) heating, ventilation and air conditioning systems ("HVAC") that prevent overheating of the computer equipment, and (4) security measures which prevent unauthorized persons from gaining access to the computer equipment.

Switch filed the instant lawsuit against Defendant David Ballard on February 1, 2011. According to the Complaint, Mr. Ballard served as Switch's chief financial officer for approximately two years until he was terminated in June, 2006.  Switch alleges that during his employment, Mr. Ballard became intimately aware of Switch's trade practices and secrets, including the location of Plaintiffs' carrier fiber and the structure of the related carrier fiber agreements, the location of Switch's key clients' installations, the terms of Switch's agreements with those key clients, who Switch's primary contractors and vendors are, the terms of Switch's arrangements with those contractors and vendors, and the design and operation of Switch's data center facilities. *Complaint (#1)*, ¶8.  Switch alleges that it became aware that Mr. Ballard was planning to build a competing data center on a parcel of land "in the immediate proximity" to Switch's three data centers on East Sahara Avenue in Las Vegas, Nevada.  ¶¶ 11-14.  Switch alleges that Mr. Ballard enticed the key contractors and architects for Switch's data centers to participate in the construction of the competing project, utilizing technical drawings and schematics that were either identical to or materially similar to those owned by Switch and utilized to construct the Switch data centers. ¶15.

Switch's first cause of action, entitled "Misappropriation of Intellectual Property," alleges that Mr. Ballard could not reasonably build a data center on the subject property without using Switch's trade agreements and trade secrets.  ¶¶17-18. Switch also alleges claims for breach of contract, tortious interference with contractual relations, unfair commercial advantage, unjust enrichment, declaratory relief, and copyright infringement.  The complaint seeks an award of damages in excess of $10,000.00.  Switch also requests that Mr. Ballard be prohibited from proceeding with the construction of the data center, and that Defendant and those in concert with him be enjoined from using Switch's construction plans and diagrams.  Switch has not filed a motion for temporary restraining order or preliminary injunction.

. . .

Mr. Ballard admits in his answer filed on March 4, 2011, that he was involved in a project to build a data center adjacent to Switch's data centers on East Sahara Avenue. *Answer (#8)*, ¶8. Mr. Ballard also admits that he had hired the electrical engineer and contractor who participated in the design or construction of some of Switch's facilities.  ¶9.  Mr. Ballard contends, however, that the engineer, Harris Engineering, owns the rights to the plans and designs it prepared for the Switch data centers and, therefore, neither Mr. Ballard nor Harris Engineering has infringed upon Switch's rights.  Mr. Ballard also admits that during his employment with Switch he acquired some knowledge about the matters alleged in paragraph eight of Switch's complaint.  Mr. Ballard denies, however, that the information he acquired constitute trade secrets or confidential information protected under Nevada law or the Confidentiality and Assignment of Inventions Agreement that he executed during his employment with Switch. *Answer (#8)*, ¶4.

On May 27, 2011, Mr. Ballard filed a motion to compel Switch to provide responses to his interrogatories and requests for production of documents.  Mr. Ballard's Interrogatory No. 1 asked Switch to describe each and every "trade practice," "trade secret," item of confidential information, or other item of "intellectual property" it claims Mr. Ballard has misappropriated or is likely to misappropriate.[2]  Although the Court was critical of the form of this interrogatory, it held that it was proper and that Switch was required to answer it. *See Order (#65)*, entered on September 7, 2011.

Switch's initial answer to Interrogatory No. 1, which was provided subject to its objections, repeated the allegations in paragraph eight of its complaint, with the additional statement that Ballard had knowledge "of technology and designs unique to Switch's offerings and to the datacenter industry, including unique Heating Ventilation and Air Conditioning ("HVAC") designs, server rack layout and power designs, segregated air designs, among other novelties to the datacenter industry invented by CEO Rob Roy and other Switch employees and contractors, physical security measures unique to Switch, Tri-Redundant Electrical Block Designs assigned to

---

[2]Early in this litigation, the parties entered into a stipulated protective order regarding the exchange of allegedly confidential or trade secret information, including producing certain documents or information for "attorney-eyes only" review. *Stipulated Protective Order (#18)*.

Switch in the construction of NAP 4 attached to Ballard's First Set of Requests for Production No.

12." *See Order (#65), pg. 4.*  This answer, at most, identified the categories of Switch's alleged

trade secrets, but did not describe the trade secrets themselves.  The answer also left open the

possibility that Switch had not listed all categories of trade secrets that it accuses Mr. Ballard of

having misappropriated or intending to misappropriate.

In holding that Switch's initial answer to Interrogatory No. 1 was insufficient, the Court

stated:

> Ballard is entitled to an answer to Interrogatory No. 1 which
> identifies the specific trade secrets that Switch alleges Ballard has
> misappropriated or that it has reason to believe he intends to
> misappropriate for use in his competing data center.  If Switch's first
> cause of action is predicated on something other or more than
> misappropriation of "trade secrets," then Switch also needs to explain
> that in its answer to Interrogatory No. 1.  Switch is also required to
> set forth in reasonable detail, the facts which support its claim that
> the information it seeks to protect qualify as trade secrets under
> Nevada law.  Switch is also required to identify the documents that
> contain or describe the particular trade secrets or "intellectual
> property" that it alleges have been or are likely to be misappropriated
> by Defendant Ballard.

*Order (#65), pg. 10.*

Switch served its First Supplemental Response to Defendant's First Set of Interrogatories

on September 20, 2011.  The Supplemental Response included an 18 page supplemental response

to Interrogatory No. 1.  Switch's Supplemental Response identifies five categories of trade secrets:

1.  Switch's NAP 4, NAP 5 and NAP 7 Electrical One Line Designs;

2.  Switch's NAP 4, NAP 5 and NAP 7 Heating Air Conditioning and Ventilating ("HVAC") System Designs;

3.  Switch's NAP 4, NAP 5 and NAP 7 . . . Designs for hot and cold separation of air in server rack layout;

4.  The Location of Switch's Carrier Fiber entering its various NAPs, specifically NAP 4 and NAP 7;

5.  Switch's Security Measures and Designs Implemented in NAP 4, NAP 5 and NAP 7.

In regard to categories 1-3, Switch references the designs described with more particularity

in the patent application previously produced to Defendant Ballard, followed by a brief description

of the elements of the designs.  Under category 4, Switch refers to the contracts between fiber optic

4

carriers and Switch.  Under category 5, Switch lists several elements that make up its security

measures and designs for its data center facilities.  In subpart C of its Supplemental Response,

Switch identified documents that relate to the trade secrets identified in subpart A.

During the June 8, 2012 hearing on Switch's Motion to Compel and Mr. Ballard's Request

for a Status Conference, Mr. Ballard's counsel informed the Court that Mr. Ballard is no longer

proceeding with the building of the data center on the property adjacent to Switch's data centers on

East Sahara Avenue.  Mr. Ballard, however, reserves the right to proceed with the project at some

unspecified time in the future.  Mr. Ballard is instead proceeding with a data center project in the

northwest part of Las Vegas.  This project reportedly involves the refitting of an existing data

center facility and does not use the plans and designs for the proposed data center near Switch's

East Sahara Avenue facilities.  Switch's counsel also informed the Court that Switch is

reconsidering the claims alleged in its complaint and is preparing an amended complaint.  Switch

nevertheless requests that the Court grant its motion to compel on the grounds that the requested

documents and information will be relevant to its new or revised claims.

## DISCUSSION

There are two principal issues concerning Switch's motion to compel.  The first issue is

whether Mr. Ballard should be required to respond to Switch's discovery requests if Switch has still

not described its alleged trade secrets with reasonable particularity.  The second issue is whether

Mr. Ballard is required to supplement his responses to requests for production as to documents that

were created after Mr. Ballard served his responses.  Additional issues relate to whether certain

discovery requests are vague, overbroad and irrelevant.

**1.     Whether Switch Should be Required to Describe Its Alleged Trade
Secrets With More Particularity Before Defendant is Required to
Respond to its Discovery Requests.**

Several courts have held that a party alleging a claim for misappropriation of trade secrets is

required to identify its alleged trade secrets with reasonable particularity before it will be allowed to

. . .

. . .

. . .

5

compel discovery of its adversary's trade secrets.[3]  *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 12 Del. J. Corp. L 249 (Del. 1986), citing *Xerox Corp. v. International Business Machines Corp.*, 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974); *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 680-81 (N.D.Ga. 2007); *Automed Techs., Inc. v. Eller*, 160 F.Supp.2d 915, 925 (N.D.Ill. 2001); *Dura Global Technologies, Inc. v. Magna Donnelly, Corp.*, 2007 WL 4303294 (E.D.Mich. 2007); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F.Supp.2d 1322 (S.D.Fla. 2001); and *Ikon Office Solutions v. Konica Minolta Business Solutions*, 2009 WL 4429156, *4-*5 (W.D.N.C. 2009).  California has codified this requirement in §2019.210 of the California Civil Procedure Code.  *See Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980 (S.D.Cal. 1999) and *Gabriel Technologies Corp. v. Qualcomm Inc.*, 2012 WL 849167 (S.D.Cal. 2012) (applying §2019.210 pursuant to the *Erie* Doctrine).

*DeRubeis v. Witten Technologies, Inc.* identifies "at least four policies" that underlie this requirement:  (1) If discovery on defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as "fishing expeditions" to discover the trade secrets of a competitor; (2) until the trade secret plaintiff has identified the trade secrets at issue with some specificity, there is no way to know whether the information sought is relevant; (3) it is difficult for a defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated, and (4) requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives. 244 F.R.D. at 680-81.  *See also* Charles Tait Graves and Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, Northwest Journal of Technology & Intellectual Property, (Fall 2006), 5 NWJTIP 68, 75 (identifying additional policy reasons for the requirement, but also arguing

---

[3]The Nevada Uniform Trade Secrets Act, NRS 600A.030.5, defines "trade secret" as "information, including a formula, pattern, complication, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code,  that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

that the first factor listed in *DeRubeis* is not one upon which courts should rely).

*DeRubeis* broadly defined "reasonable particularity" to mean that the plaintiff must provide the defendant with a sufficient description of the trade secrets it believes to be at issue so that (1) defendant is put on notice of the nature of plaintiff's claims and (2) defendant can discern the relevancy of any requested discovery on its trade secrets. *DeRubeis*, 244 F.R.D. at 681. The defendant/counterclaimant in *DeRubeis* responded to an interrogatory requesting that it describe its alleged trade secrets with particularity by generally listing software, data processing algorithms, and processes that it had developed, owned, and/or licensed for its underground mapping and imaging business. The court stated that "this disclosure does not specify any trade secrets at all, but rather reveals the end results of, or functions performed by, the claimed trade secrets." *Id* at 679.

In *Dura Global Technologies v. Magna Donnelly Corp.*, 2007 WL 4303294 (E.D.Mich. 2007), the plaintiffs' amended complaint described the alleged trade secrets as "valid and subsisting trade secrets relating to our sliding window assemblies for motor vehicles" and also referenced a patent for "Power Sliding Rear Window" and a patent for "Motor Vehicle Window Construction With Pull-Pull Cable System" with respect to their claims for patent infringement. The plaintiffs subsequently responded to an interrogatory asking them to specifically describe the alleged trade secrets. In holding that plaintiffs' response was insufficient, the court stated:

> Plaintiffs' response to Interrogatory No. 11 does not identify the trade secrets at issue with the particularity necessary for Defendant to identify the information which Plaintiffs claim was misappropriated. *See generally Automed Techs.*, 160 F.Supp. at 925 (General allegations of "software, designs and research" and generic references to three research projects by name are insufficient to identify trade secrets in question.). Plaintiffs' references, even those to control plans, are too general to specify the trade secrets at issue. Furthermore, it is not Defendant's burden to review over 8500 sheets of paper, among the other information provided, to discern which material constitutes Plaintiffs' trade secrets and further, which of those are the subject of Plaintiffs' claim for misappropriation.

In *Hill v. Best Medical International, Inc.*, 2010 WL 2546023, *3-*4 (W.D.Pa. 2010), the court also held that the plaintiff's description of the trade secrets allegedly misappropriated by the defendants was insufficient. The court stated that "general allegations and generic references to products are insufficient to satisfy Best Medical's burden of identifying its misappropriated trade

7

secrets with reasonable particularity, especially in light of the extensive discovery that Best Medical has obtained in these consolidated cases." *Id.* at *4.  The court also cited *Struthers Scientific and Int'l Corp. v. General Foods Corp.*, 51 F.R.D. 149 (D.Del. 1970) which held that if the plaintiff was relying for its trade secret allegations on a unique combination of known components disclosed to the defendant, then the plaintiff must specifically describe what particular combination of components it has in mind, how the components are combined, and how they operate in unique combination.  *Hill*, 2010 WL 2546023, at *4 n. 8.

Although Switch's Supplemental Response to Interrogatory No. 1 is somewhat more informative than its initial response, it still falls short of describing its alleged trade secrets with reasonable particularity.  As discussed above, Switch identifies various concepts, elements or components that make up its Electrical One Line Designs, HVAC designs, designs for hot and cold separation of air in the server rack layout, and its security measures and designs.  Switch does not appear to be claiming that the generally identified concepts, elements or components are themselves trade secrets.  Rather, Switch appears to claim that its designs involve novel or unique combinations of the various concepts, elements or components.  *See* Switch's initial response to Interrogatory No. 1.  In order to meet its burden of describing its alleged trade secrets with reasonable particularity, Switch must specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination.  *Struthers Scientific and Int'l Corp. v. General Foods Corp.*, 51 F.R.D. 149 (D.Del. 1970).  Switch's Supplemental Response to Interrogatory No. 1 does not do this.  The Court therefore will not require Mr. Ballard to further respond to Switch's discovery requests relating to Mr. Ballard's alleged misappropriation of trade secrets until Switch provides a description of its alleged trade secrets with reasonable particularity in accordance with *Order (#65)* and this order.

Switch's seventh cause of action (mislabeled as its Sixth Cause of Action) alleges a claim for copyright infringement under 17 U.S.C. §106 and §501.  Switch alleges that Mr. Ballard has utilized construction plans and diagrams (the "Works") belonging to Switch for the benefit of his project. *Complaint (#1)*, ¶49.  This claim is predicated on the allegation that Harris Engineering

8

provided Mr. Ballard with technical drawings and schematics that are identical to or materially similar to those it prepared for Switch.  *Id.* ¶17.  Mr. Ballard contends, however, that Harris owns the legal rights to technical drawings and schematics he prepared for Switch.  Discovery regarding the copyright infringement claim does not necessarily have to be postponed pending a more complete description of Switch's alleged trade secrets.  Switch's requests for production of documents, however, broadly encompass, but do not differentiate between, information relevant to the Switch's copyright infringement claim and its misappropriation of trade secrets claims.  The request also potentially sweep in information that is not relevant to any of Switch's claims.  For this reason, the Court will not require Mr. Ballard to further respond to Switch's discovery requests until Switch describes its alleged trade secrets with reasonable particularity.

        **2.**    **Whether Defendant Is Required to Supplement His Discovery Responses in Regard to Documents That Were Created after He Served His Responses to Plaintiffs' Requests for Production of Documents.**

Mr. Ballard argues that he has no duty to supplement his responses to request for production in regard to documents that were created after he served his original responses.  This dispute particularly relates to e-mail communications that have occurred since Defendant served his initial discovery responses.  It also relates to any data center construction plans that have been created since Mr. Ballard served his previous responses.  Mr. Ballard states, however, that no new plans have been created because he has postponed the data center project adjacent to Switch's facilities.

Rule 26(e)(1) of the Federal Rules of Civil Procedure states:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production or request for admission—must supplement or correct its disclosure or response:
>
> (A)    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B)    as ordered by the court.

This Court agrees with the construction of Rule 26(e) in *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 74 (W.D.N.Y. 2011) which provides a detailed examination of the history of the rule from the 1970 version through the amendments to the rule in 1993 and 2007.  In

holding that the duty to supplement under Rule 26(e) includes information or documents that were

created after the party's initial response, the court stated:

> The 2007 restyling amendment to <u>Rule 26</u> recognizes the duty
> to supplement or correct a disclosure or response with
> information <u>that is thereafter acquired, as well as information
> that was not originally provided even though it was available
> at the time of the prior disclosure.</u>
>
> 6-26 MOORE'S FEDERAL PRACTICE–CIVIL §26.131 (3d ed.
> 2010).  Information thereafter acquired by a party cannot exclude
> documents subsequently created by a party, as by creating the
> document the party most certainly has thereby "acquired"
> information which it reasonably should know, *i.e.,* "learns," has
> rendered its prior response materially inaccurate or incomplete.

274 F.R.D. at 75.

In commenting on the burden that this duty to supplement may impose, the court stated:

> It is, of course, true that in protracted and complex litigation the
> generation of new and responsive documents could conceivably
> impose unfair supplementation burdens on a responding party and its
> attorneys, as the 1970 Revisers Comment noted, which should not
> fall within a general duty to supplement absent a specific followup
> request for supplementation, or if directed by the court.  But that
> potential burden was addressed in the 1970 structure of Rule 26(e)
> and the 1993 amendment by imposing a requirement upon the
> responding party covering both knowledge of the new information,
> whether by subsequent discovery of its prior existence or its later
> creation, as well as a showing of the materiality of the subject
> information.  Where these two criteria are satisfied, the risk that a
> party will be burdened or sanctioned unfairly for violation of the duty
> to supplement based on the advent of relevant and material
> information unknown to the party at the time of its initial response or
> because of its later creation is greatly reduced if not eliminated.

*Id.* at 77.

In *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19 (S.D.N.Y. 1995), the court held

that pursuant to Rule 26(e) the plaintiff had a duty to supplement prior disclosures and produce

updated medical records where plaintiff's medical treatment for his alleged injuries was ongoing

and materially affected the claim for damages.  A party is not required, however, to supplement a

prior discovery response with later acquired or created information or documents that do not render

its previous responses materially incorrect or incomplete.  *Schick v. Fragin*, 1997 WL 465271, *7

(Bkrtcy S.D.N.Y.1997).

10

The cases cited by Mr. Ballard in support of the argument that Rule 26(e) does not require supplementation in regard to documents that were created after the party served its initial response do not analyze the language of the rule, the Advisory Committee Notes, or other legal authority. *See High Fructose Corn Syrup Antitrust Litigation*, 2000 WL 33180835 (C.D.Ill. 2000); *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2008 WL 4786671 (N.D.Cal. 2008) and *Kingsway Financial Services, Inc. v. PriceWaterhouseCoopers LLP*, 2006 WL 1295409 (S.D.N.Y. 2006).  The decision in *High Fructose* was also based on the fact that the plaintiff had previously agreed to limit its discovery requests to specific cut-off dates, but then sought supplementation of responses through later dates.  The court in *Kingsway Financial Services, Inc.*, stated that it is unclear whether Rule 26(e) requires supplementation as to later created documents and that the court had been unable to find any precedents addressing the issue. This Court concludes that the interpretation of Rule 26(e) in *Robbins & Myers, Inc. v. J.M. Huber Corp.* is more soundly based than the cases relied on by Defendant.  Assuming that Switch complies with this order and describes its alleged trade secrets with reasonable particularity, then Mr. Ballard will have an obligation to supplement his previous discovery responses pursuant to Rule 26(e), including producing documents that have been generated since his prior discovery responses to the extent they materially affect the completeness or correctness of the previous responses.  For example, documents relating to continuing efforts to design or build a data center facility that allegedly incorporates Switch's trade secrets, should be produced in supplemental responses.

## CONCLUSION

Mr. Ballard is not required to further respond to Switch's discovery requests or to supplement his previous responses thereto until Switch supplements its response to Mr. Ballard's Interrogatory No. 1 by describing its alleged trade secrets with reasonable particularity.  Once Switch has adequately responded to Defendant's Interrogatory No. 1, the parties should further meet and confer regarding Mr. Ballard's responses to Switch's document requests and attempt to resolve those issues without the need for a further motion to compel.  As part of that process, Switch should narrow the scope its discovery requests to documents that contain information relevant to the claims or defenses in this action.  Accordingly,

11

1    **IT IS HEREBY ORDERED** that Plaintiffs' First Motion to Compel Defendant to Produce

2    Responses and Responsive Documents to Plaintiff's Discovery Requests (#91) is **denied**, without

3    prejudice.

4    **IT IS FURTHER ORDERED** that Plaintiffs shall further supplement their response to

5    Defendant's Interrogatory No. 1 by describing their alleged trade secrets with reasonable

6    particularity on or before **July 3, 2012**.

7    DATED this 19th day of June, 2012.

8

9    _____

10   GEORGE FOLEY, JR.
     United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28